```
UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
In re:                                           :
                                                 :
A&J QUALITY DIAMONDS, INC.                       :    Chapter 7
                                                 :    Case No. 07-12496 (MG)
                                                 :
                        Debtor.                  :
                                                 :
---------------------------------------------------------------x
```

# MEMORANDUM OPINION AND ORDER AFTER TRIAL DENYING RELIEF UNDER INVOLUNTARY CHAPTER 7 PETITION

**A P P E A R A N C E S:**

TODTMAN, NACHAMIE, SPIZZ & JOHNS, P.C.
*Attorneys for Petitioners*
425 Park Avenue
New York, New York 10022
By:  Scott S. Markowitz

LEO FOX, ESQ.
*Attorneys for Debtor*
630 Third Avenue
New York, New York 10017
By:  Leo Fox

**MARTIN GLENN**
**United States Bankruptcy Judge**

On August 7, 2007, GM Gold & Diamonds LP, A-V Diamonds Inc., and Gold & Gems Holding, Inc. ("Petitioners"), three trade creditors, filed an involuntary chapter 7 petition against A&J Quality Diamonds, Inc. ("Debtor"). The chapter 7 petition lists the three petitioners' claims as totaling $346,316.05. The involuntary petition was contested. *See* FED. R. BANKR. P. 1011. A trial was held on October 24, 2007. For the reasons

1

explained below, the Petitioners failed to prove that an order for relief should be granted and the petition is therefore dismissed.

      Petitioners' counsel checked the following box on the preprinted petition form:

> "3.a. The debtor is generally not paying such debtor's debts as they become due, unless such debts are the subject of a bona fide dispute as to liability or amount . . . ." (Involuntary Petition, Allegations, at 1 (ECF # 1).)

      The Debtor filed an answer to the petition on September 20, 2007. The debtor responded to the allegation in paragraph 3.a. as follows:

> "Denies the allegations of Paragraph 3 of the Involuntary Petition and states that the Debtor has been involved in negotiating acceptable understandings for payment with the vast majority of its creditors." (Ans. ¶ 3 (ECF # 5).)

      Among the affirmative defenses asserted in the answer, the Debtor requested, pursuant to § 305 of the Bankruptcy Code, that the court either dismiss or suspend the proceeding based on the best interests of the creditors. (Ans. ¶ 7.) The Debtor also alleged that it was in the process of negotiating payment terms with all of its creditors and that the filing was an attempt to coerce the Debtor and seek collection, despite the order of attachment in favor of two of the three Petitioners by the New York State Supreme Court related to the same underlying obligations. (Ans. ¶¶ 5, 6.) The Debtor alleged that the creditors' interests were protected by the provisions of the attachment and that an out of court settlement of this debt should have been adequate in that it would avoid the additional costs of bankruptcy administration. (Ans. ¶ 6.)

      On October 23, 2007, one day before the trial, the parties filed a stipulation of facts with only two relevant facts for purposes of trial:

> "1. A&J Quality Diamonds, Inc. ("AJ' or the 'Alleged Debtor'), hereby admits that three (3) petitioning creditors . . . hold non-disputed

2

>       unsecured claims which are not contingent as to liability against A&J in the sum of at least $12,300.00. It is further agreed that such claims are not subject to bona fide dispute.
>
>       2. The Alleged Debtor has not paid the petitioning creditors' claims as required per the terms of the invoices."

(Stipulation of Non-Disputed Facts and Related Issues With Respect to Contested Involuntary Petition ¶¶ 1, 2 (ECF # 9).)

When the trial commenced on October 24, 2007, the Petitioners' counsel rested without calling any witnesses or introducing any evidence other than the two stipulated facts. Indeed, the Petitioners' counsel did not introduce evidence of the amounts of the Petitioners' unpaid claims, the terms of the transactions giving rise to the claims, or any other facts about the Petitioners' dealings with the Debtor. While the petition lists each of the Petitioners and the amounts of their claims, that information appears below the section of the petition form where each petitioner signed under penalty of perjury that "the *foregoing* is true and correct according to the best of their knowledge, information, and belief." Debtor's answer only responded to the allegations of the petition, which are found above the signature block, and thus the Debtor did not and was not required to respond concerning the precise amount of the Petitioners' claims. The stipulation of facts, the Debtor's counsel argued, only agreed that the Petitioners hold "non-disputed unsecured claims which are not contingent as to liability against A&J *in the sum of at least $12,300.00.*" The Debtor has not admitted that the Petitioners' claims total $346,316.05.

The Debtor's counsel likewise rested without introducing any evidence. Thus, no evidence was offered by either side about the industry in which the Debtor does business, the Debtor's business practices, the total number and amount of unpaid claims, and the

3

Debtor's overall conduct of its financial affairs. Petitioners' counsel "argued" that the Court should presume bad things about the Debtor from the fact that Petitioners' claims are unpaid. While the Debtor's answer included allegations about state court litigation between two of the three Petitioners and the Debtor, including a reference to a prejudgment attachment, no evidence was introduced at trial about that litigation.

Because the Petitioners have failed to carry their burden of proof, the Court has no choice but to dismiss the petition.

## DISCUSSION

Bankruptcy Code § 303 states, in relevant part, that:

> (b) An involuntary case against a person is commenced by the filing with the bankruptcy court of a petition under chapter 7 or 11 of this title—
> (1) by three or more entities, each of which is either a holder of a claim against such person that is not contingent as to liability or the subject of a bona fide dispute as to liability or amount, . . . if such noncontingent, undisputed claims aggregate at least $12,300 more than the value of any lien on property of the debtor securing such claims held by the holders of such claims

11 U.S.C. § 303(b)(1).

The Court shall order relief against the debtor unless the petition is timely controverted. 11 U.S.C. § 303(h). If the petition is controverted, relief can be granted only if specific conditions are met. Bankruptcy Code § 303(h)(1), the subsection applicable in this case, provides that the Court shall order relief only if "the debtor is generally not paying such debtor's debts as such debts become due unless such debts are the subject of a bona fide dispute as to liability or amount." 11 U.S.C. § 303(h)(1). Therefore, the outcome in this case turns on whether the Debtor is "generally" not paying its debts as they become due.

The petitioning creditors have the burden of proving all statutory requirements of

4

Bankruptcy Code § 303, including that the debtor is *generally* not paying its bills on time. *In re Palace Oriental Rugs, Inc.,* 193 B.R. 126, 128 (Bankr. D. Conn. 1996) (finding creditors' failure to show debts constituted a majority or substantial minority of total debts in number or amount basis for dismissal of the case). Once this burden is met, the burden then shifts to the debtor to show that there is a dispute as to a material fact, like the existence of the liability or its amount. 2-303 COLLIER ON BANKRUPTCY ¶ 303.14 (15th ed. rev. 2007) (citing *Rothery v. Cunningham (In re Rothery)*, 211 B.R. 929, 935 (B.A.P. 9th Cir. 1997), *rev'd on other grounds*, 143 F.3d 546 (9th Cir. 1998)); *see also In re Audio Visual Workshop*, 211 B.R. 154, 158 (Bankr. S.D.N.Y. 1997).

Courts have stated that the determination whether a debtor is generally paying its debts calls for the consideration of four factors: "(1) the number of unpaid claims; (2) the amount of such claims; (3) the materiality of the non-payments; and (4) the debtor's overall conduct of its financial affairs." *In re Euro-American Lodging Corp.*, 357 B.R. 700, 713 (Bankr. S.D.N.Y. 2007); *In re Amanat,* 321 B.R. 30, 39 (Bankr. S.D.N.Y. 2005); *In re Paper I Partners, L.P.*, 283 B.R. 661, 677 (Bankr. S.D.N.Y. 2002). The Court may also consider whether the debtor has terminated its business operations entirely, and whether the past debts due are extremely large in comparison to the debtor's assets. *In re Paper I Partners,* 283 B.R. at 677 (citing *In re B.D. Int'l Discount Corp.*, 701 F.2d 1071, 1074 (2d Cir.1983)) (debtor was generally not paying its debts as the debts became due when debtor had terminated its business operations completely, and its unpaid debts were extremely large compared to the debtor's assets). The failure to pay just one significant creditor can support a finding that the debtor is generally not paying its debts if the creditor represents a significant amount of the total debt. *In re Euro-*

5

*American Lodging Corp.*, 357 B.R. at 713*; In re Amanat,* 321 B.R. at 39-40 ("Where a debtor fails to pay even one debt that makes up a substantial portion of its overall liability, a court may find that he is generally not paying his debts."). In *Amanat*, the court looked to the percentage of total debt that the petitioning creditors' claims represented to the total debt owed in terms of dollar amount rather than number of creditors. *In re Amanat,* 321 B.R. at 40. In that case, the court found that 65% of total debt and 87% of unsecured debt was a substantial portion of overall debt to qualify under § 303(h). *Id*. In *In re Paper I*, the court relied on both the percentage that petitioners' claims represented of the debtors' assets and of the debtors' total debts. *In re Paper I Partners,* 283 B.R. at 677 (relying on the fact that the debt was 37% of assets and over 63% of total debt). In other circuits the applicable test has been articulated as a flexible totality of the circumstances test focusing upon several factors including the number of unpaid claims overall, the amount of the claims, the materiality of non-payment, and the overall conduct of the debtor's financial affairs. 2006 COLLIER BANKRUPTCY CODE § 303 (Pamphlet ed. 2006) (citing *In re Concrete Pumping Serv.*, 943 F.2d 627 (6th Cir. 1991); *Fed. Fin. Co. v. Dekaron Corp.*, 261 B.R. 61 (S.D. Fla. 2001)).

In this case the record is devoid of evidence addressing any of the factors courts regularly examine in determining whether the debtor is generally not paying its debts as they become due. At most the record shows that these three creditors' claims were not paid when due. To the extent that other creditors have already agreed with the Debtor to adjust their original business terms to stretch out or reduce required payments – facts suggested although not proven by the Debtor's answer – those other creditors' claims may not be past due. This, of course, is speculation, but the absence of proof about the

number and amount of other creditors' claims, and the Debtor's overall conduct of its financial affairs, leaves the Court unable to conclude that the Debtor is generally not paying its debts as they become due. Because the Petitioners failed to carry their burden of proof under § 303(h), the request for relief under chapter 7 must be denied.

## CONCLUSION

For the foregoing reasons, the request for relief is DENIED and the involuntary chapter 7 petition is DISMISSED.

**IT IS SO ORDERED.**

DATED: **October 29, 2007**
New York, New York

                                                                **/s/Martin Glenn**
                                                                  MARTIN GLENN
                                                United States Bankruptcy Judge